RE: OPINION REQUEST REGARDING COMMUNITIZATION OF OBLIGATION FOR PAYMENT OF ADDED VALUE BENEFITS RELATING TO PRODUCTION FROM OIL AND GAS SPACING UNITS.
ATTORNEY GENERAL LOVING HAS ASKED ME TO RESPOND TO YOUR LETTER REQUESTING AN OFFICIAL ATTORNEY GENERAL OPINION. HOWEVER, BECAUSE YOUR QUESTION MAY BE ANSWERED BY REFERENCE TO EXISTING STATUTES AND CASE LAW, THE ISSUANCE OF A FORMAL OPINION IS NOT NECESSARY. ACCORDINGLY, THE DISCUSSION WHICH FOLLOWS IS NOT AN OFFICIAL OPINION OF THE ATTORNEY GENERAL. RATHER, IT REPRESENTS THE ANALYSIS AND CONCLUSIONS OF THE UNDERSIGNED ASSISTANT ATTORNEY GENERAL.
QUESTION PRESENTED
YOUR LETTER PRESENTED THE FOLLOWING QUESTION:
 DOES CURRENT LAW UNDER 52 O.S. 87.1 (1990) IN LIGHT OF THE SUPREME COURT'S RULING IN THE CASE OF SHELL OIL COMPANY V. CORPORATION COMMISSION, 389 P.2D 951 (OKLA. 1964), REQUIRE THAT THE OBLIGATION FOR PAYMENT OF ADDED VALUE BENEFITS, I.E., DEHYDRATION, COMPRESSION AND/OR TRANSPORTATION CHARGES CONTAINED WITHIN LEASES COVERING LANDS LYING WITHIN A DRILLING AND SPACING UNIT BE COMMUNITIZED?
APPLICABILITY OF THE SHELL OIL DECISION
YOUR LETTER SPECIFICALLY REFERENCES THE CASE OF SHELL OIL CO. V. CORPORATION COMMISSION, 389 P.2D 951 (OKLA. 1964) (HEREINAFTER "SHELL OIL"), AND QUESTIONS THE IMPACT OF THAT CASE ON THE OBLIGATION FOR PAYMENT OF "ADDED VALUE BENEFITS" OR POST-PRODUCTION COSTS IN THE CONTEXT OF A DRILLING AND SPACING UNIT. HOWEVER, MY REVIEW OF SHELL OIL INDICATES THAT THE CASE DOES NOT DIRECTLY OR INDIRECTLY DEAL WITH POST-PRODUCTION COSTS.
THE SHELL OIL DECISION INVOLVED AN INTERPRETATION OF THE RIGHT OF ROYALTY OWNERS IN A COMPULSORY POOLING CONTEXT TO RECEIVE ROYALTY PAYMENTS. THE DECISION DID NOT DEAL, EITHER DIRECTLY OR INDIRECTLY, WITH THE SEPARATE OBLIGATION OF SUCH ROYALTY OWNERS FOR PAYMENT OF POST-PRODUCTION COSTS. THUS, IN MY OPINION, SHELL OIL HAS NO BEARING ON THE ISSUE PRESENTED BY YOUR LETTER.
POST-PRODUCTION COSTS IN A NON-POOLING CONTENT
THERE APPEARS TO BE NO REPORTED OKLAHOMA AUTHORITY ADDRESSING RESPONSIBILITY FOR THE PAYMENT OF "VALUE ADDED BENEFITS" OR "POSTPRODUCTION COSTS" IN A POOLING CONTEXT SUCH AS THAT ADDRESSED BY 52 O.S. 87.1 (1991). THERE IS, HOWEVER, OKLAHOMA CASE LAW DEALING WITH POST-PRODUCTION COSTS IN A NON-POOLING CONTEXT.
THESE CASES LOOK TO THE EXPRESS LANGUAGE OF THE APPLICABLE OIL AND GAS LEASE TO DETERMINE RESPONSIBILITY FOR POST-PRODUCTION COSTS. THE CASES GENERALLY HOLD THAT, ABSENT AN EXPRESS AGREEMENT TO THE CONTRARY WITHIN THE LEASE, THE NONOPERATING INTERESTS IN THE WELL (I.E., THOSE OTHER THAN THE WORKING INTEREST) MUST BEAR A PROPORTIONATE SHARE OF POST-PRODUCTION COSTS. SEE HARDINQ V. CAMERON, 220 F. SUPP. 466, 471 (W.D. OKLA. 1963) ("THE RULE IN OKLAHOMA FIXING THE "VALUE", OR "MARKET PRICE" OF GAS AT THE WELLHEAD AND PROCESSED BY LESSEE THROUGH A COMPRESSOR PLANT CONSTRUCTED BY IT IS THE GROSS PRICE WHICH THE LESSEE RECEIVES FROM THE PURCHASER LESS THE ACTUAL COST OF COMPRESSION AND REASONABLE DEPRECIATION ON ITS COMPRESSOR PLANT."); JOHNSON V. JERNIGAN, 475 P.2D 396 (OKLA. 1970) (LEASE ENTITLING ROYALTY OWNERS TO ONE-EIGHTH OF GROSS PROCEEDS AT PREVAILING MARKET RATE FOR ALL GAS SOLD OFF — PREMISES HELD TO OBLIGATE ROYALTY OWNERS TO PAY PROPORTIONATE SHARE OF COSTS TO TRANSPORT PRODUCTION OFF-PREMISES); SEE ALSO CLARK V. SLICK OIL CO., 211 P. 496 (OKLA. 1922) (LESSOR HELD NOT LIABLE FOR COSTS OF ON-SITE OIL STORAGE TANKS WHERE LEASE AUTHORIZED RECEIPT OF A 1/8 ROYALTY OF ALL PRODUCTION, "FREE OF COST . . .(AND) IN THE PIPE LINE"); BARTON V. LACLEDE OIL MINING CO., 112 P. 965 (OKLA. 1910) (LESSORS HELD NOT LIABLE FOR COSTS OF OFF-PREMISES TRANSPORTATION WHERE LEASE AUTHORIZED RECEIPT OF A 1/10 ROYALTY FOR PRODUCTION "SOLD OFF THE PREMISES" AND WHERE LESSEE ENTERED INTO A SEPARATE GAS SALES/TRANSPORTATION CONTRACT WITHOUT THE LESSORS' KNOWLEDGE OR CONSENT).
IT IS IMPORTANT TO NOTE THAT ANY OBLIGATION TO SHARE IN POSTPRODUCTION COSTS IS TREATED IN THESE CASES AS A MATTER OF CONTRACT BETWEEN THE WORKING INTEREST AND ROYALTY OWNERS SEPARATE AND DISTINCT FROM ANY CONTRACTUAL RIGHT TO RECEIVE ROYALTIES. IN OTHER WORDS, THE RIGHT TO RECEIVE ROYALTY PAYMENTS DOES NOT IN AND OF ITSELF OBLIGATE A PARTY TO SHARE IN POST-PRODUCTION COSTS. ROYALTY OWNERS ARE FREE, WHERE POSSIBLE, TO NEGOTIATE AWAY ANY OBLIGATION TO SHARE IN POST-PRODUCTION COSTS WITHOUT AFFECTING THEIR RIGHT TO RECEIVE ROYALTY PAYMENTS.
POST-PRODUCTION COSTS IN A POOLING CONTEXT 52 O.S. 87.1 OF TITLE 52 DEALS GENERALLY WITH ESTABLISHING SPACING AND DRILLING UNITS FOR THE DUAL PURPOSES OF PREVENTING "WASTE" AND PROTECTING CORRELATIVE RIGHTS. 52 O.S. 87.1. THE SECTION GIVES THE CORPORATION COMMISSION VARIOUS POWERS TO ACCOMPLISH THOSE OBJECTIVES. ID. 87.1(A), (B), (C) AND (D).
SPECIAL PROBLEMS ARISE WHERE A SPACING UNIT EMBRACES TWO OR MORE SEPARATELY OWNED TRACTS OF LAND AND/OR INTERESTS. IN SUCH INSTANCES, THE OWNERS OF SUCH SEPARATE TRACTS AND/OR INTERESTS MAY VOLUNTARILY AGREE TO POOL THEIR RESPECTIVE INTERESTS AND DEVELOP THEIR LANDS AS A UNIT. ID. 52 O.S. 87.1(E). HOWEVER, WHERE THE PARTIES DO NOT OR CANNOT AGREE TO VOLUNTARILY POOL THEIR INTERESTS, THE CORPORATION COMMISSION IS EMPOWERED TO COMPEL POOLING WHERE NECESSARY "TO AVOID THE DRILLING OF UNNECESSARY WELLS, OR TO PROTECT CORRELATIVE RIGHTS." ID.
IN A NON-POOLING ARRANGEMENT, EACH LESSEE IS NORMALLY RESPONSIBLE FOR MAKING ROYALTY PAYMENTS TO HIS LESSOR(S) ONLY IF PRODUCTION IS ACHIEVED FROM THE LEASED PREMISES. HOWEVER, IN A POOLING CONTEXT, EITHER VOLUNTARY OR COMPULSORY, SECTION 87.1(E) MODIFIES THE RESPECTIVE LEASE AGREEMENTS WITH REGARD TO ROYALTY PAYMENTS IN THE FOLLOWING MANNER:
 "1. THE "FIRST PURCHASER OR PURCHASERS" OF PRODUCTION FROM THE UNIT, RATHER THAN THE OPERATOR, IS RESPONSIBLE FOR MAKING APPROPRIATE PAYMENTS TO ALL ROYALTY OWNERS WITHIN THE UNIT; AND
 2. EACH ROYALTY INTEREST OWNER IS ENTITLED TO SHARE IN ALL PRODUCTION FROM THE WELL OR WELLS DRILLED WITHIN THE UNIT "IN LIEU OF THE CUSTOMARY FIXED ROYALTY, TO THE EXTENT OF SUCH ROYALTY INTEREST OWNER'S INTEREST IN THE UNIT." EACH ROYALTY INTEREST OWNER'S "INTEREST IN THE UNIT" IS DEFINED AS "THE PERCENTAGE OF ROYALTY, INCLUDING THE NORMAL ONE-EIGHTH (L/8) ROYALTY, OVERRIDING ROYALTIES OR OTHER EXCESS ROYALTIES OWNED IN EACH SEPARATE TRACT BY THE ROYALTY OWNER, MULTIPLIED BY THE PROPORTION THAT THE ACREAGE IN EACH SEPARATELY OWNED TRACT OR INTEREST BEARS TO THE ENTIRE ACREAGE OF THE UNIT."
ID. (EMPHASIS ADDED).
IN ESSENCE, THE QUESTION WHICH YOUR LETTER POSES IS WHETHER OR NOT THIS SECTION ALSO REQUIRES ROYALTY OWNERS TO SHARE IN POST PRODUCTION COSTS ON A UNIT-WIDE BASIS RATHER THAN ON A LEASE-BY-LEASE BASIS AS IN A NON-POOLING CONTEXT. IN MY OPINION, RESPONSIBILITY FOR POST-PRODUCTION COSTS CONTINUES TO BE DETERMINED BY THE LANGUAGE OF THE INDIVIDUAL LEASE AGREEMENTS WITHIN THE SPACING UNIT, EVEN WHERE THE UNIT IS COMPRISED OF TWO OR MORE SEPARATELY OWNED TRACTS OF LAND AND/OR OTHER INTERESTS. CONSISTENT WITH EXISTING CASE LAW IN A NON-POOLING CONTEXT, EACH ROYALTY OWNER WITHIN A POOLED SPACING UNIT IS REQUIRED TO SHARE IN THE PAYMENT OF POST-PRODUCTION COSTS WITH THEIR RESPECTIVE WORKING INTEREST OWNER(S) ABSENT AN EXPRESS LEASE PROVISION TO THE CONTRARY.
THERE ARE SEVERAL REASONS FOR THIS CONCLUSION. FIRST OF ALL, THE EXPRESS LANGUAGE OF THE STATUTE, AS QUOTED ABOVE, ADDRESSES ONLY THE ROYALTY OWNERS' RIGHT TO RECEIVE ROYALTY PAYMENTS AND SAYS NOTHING ABOUT THEIR OBLIGATION TO SHARE IN THE POST-PRODUCTION COSTS OF THE UNIT. AS PREVIOUSLY NOTED, EXISTING CASE LAW TREATS THESE TWO ISSUES AS SEPARATE AND DISTINCT CONTRACTUAL MATTERS. IF THE LEGISLATURE HAD ALSO INTENDED TO POOL THE ROYALTY OWNERS' RESPONSIBILITY FOR POST-PRODUCTION COSTS IT COULD EASILY HAVE SAID SO. HOWEVER, IT DID NOT DO SO. NEITHER IS THERE ANY OTHER LANGUAGE IN SECTION 87.1 TO SUGGEST ANY LEGISLATIVE INTENT TO DO SO.
ON THE CONTRARY, THERE IS LANGUAGE WITHIN THE SECTION WHICH EVIDENCES A LEGISLATIVE INTENT TO MAINTAIN THE STATUS QUO WITH REGARD TO POST-PRODUCTION COSTS:
 "THE PORTION OF THE PRODUCTION ALLOCATED TO THE OWNER OF EACH TRACT OR INTERESTS INCLUDED IN A WELL SPACING UNIT FORMED BY A POOLING ORDER SHALL, WHEN PRODUCED, BE CONSIDERED AS IF PRODUCED BY SUCH OWNER FROM THE SEPARATELY OWNED TRACT OR INTEREST BY A WELL DRILLED THEREON."
ID. (EMPHASIS ADDED).
THE TERM "OWNER" IS EXPRESSLY DEFINED TO MEAN AN ENTITY "WHO HAS THE RIGHT TO DRILL INTO AND TO PRODUCE FROM ANY COMMON SOURCE OF SUPPLY AND TO APPROPRIATE THE PRODUCTION, EITHER FOR HIMSELF OR FOR HIMSELF AND OTHERS," I.E., A WORKING INTEREST OWNER. ID. 86.1(D) (EMPHASIS ADDED). THUS, THE INTENT OF 52 O.S. 87.1(E) IS TO LEAVE WORKING INTEREST OWNERS IN THE SAME POSITION THEY WOULD HAVE BEEN IN THE ABSENCE OF A POOLING ORDER. THAT IS, THEY ARE IN THE POSITION OF RECEIVING THEIR PRO-RATA SHARE OF PRODUCTION AND SHARING ANY POST-PRODUCTION COSTS WITH THEIR RESPECTIVE ROYALTY OWNERS, ABSENT AN EXPRESS LEASE PROVISION TO THE CONTRARY.
SECONDLY, THE STATUTE ALSO PROVIDES THAT "(N)O PART OF THE PRODUCTION OR PROCEEDS ACCRUING TO ANY (WORKING INTEREST) OWNER OF A SEPARATE INTEREST IN SUCH UNIT SHALL BE APPLIED TOWARD PAYMENT OF ANY COST PROPERLY CHARGEABLE TO ANY OTHER INTEREST IN SAID UNIT." ID. 87.1(E). AGAIN, THIS SUGGESTS A LEGISLATIVE INTENT TO PRESERVE THE CONTRACTUAL RIGHTS OF THE VARIOUS PARTIES WITHIN A UNIT EXCEPT WHERE EXPRESSLY MODIFIED BY STATUTE. THIS CONCLUSION IS FURTHER SUPPORTED BY ADDITIONAL LANGUAGE WITHIN THE SECTION WHICH PROVIDES THAT "(N)OTHING IN THIS ACT SHALL RELIEVE A LESSEE OR HIS ASSIGNEES FROM ANY OBLIGATIONS IMPOSED BY THE LEASE." ID.
THE FUNDAMENTAL PRINCIPLE OF STATUTORY CONSTRUCTION IS TO ASCERTAIN THE UNDERLYING LEGISLATIVE INTENT THROUGH AN EXAMINATION OF THE STATUTE'S LANGUAGE. SEE, E.Q., FULLER V. ODOM, 741 P.2D 449 (OKLA. 1987). WHERE THE INTENT OF THE LEGISLATURE IS PLAINLY EXPRESSED IN THE STATUTE, IT MUST BE FOLLOWED WITHOUT FURTHER INQUIRY OR STATUTORY CONSTRUCTION. SEE, E.Q., IN RE REQUEST OF HAMM PRODUCTION CO., 671 P.2D 50 (OKLA. 1983); HUGHES DRILLING CO. V. MORGAN, 648 P.2D 32 (OKLA. 1982).
THE LANGUAGE OF SECTION 87.1(E) DEALING WITH THE PAYMENT OF ROYALTIES IN A SPACING UNIT IS CLEAR AND UNAMBIGUOUS. IT EVIDENCES A CLEAR LEGISLATIVE INTENT TO MODIFY EXISTING CONTRACTUAL RELATIONSHIPS BETWEEN THE VARIOUS PARTIES PARTICIPATING IN THE UNIT WITH REGARD TO THE METHODS OF CALCULATION AND PAYMENT OF ROYALTIES. HOWEVER, THERE IS NOTHING IN THE LANGUAGE OF THE SECTION TO INDICATE ANY INTENT TO MODIFY EXISTING LAW WITH REGARD TO THE PAYMENT OF POST-PRODUCTION COSTS. IN FACT, THERE IS AMPLE LANGUAGE WITHIN THE SECTION SHOWING A CLEAR LEGISLATIVE INTENT TO EXTEND EXISTING LAW ON POST-PRODUCTION COSTS INTO A POOLING CONTEXT.
ACCORDINGLY, FOR ALL THE FOREGOING REASONS, IT IS MY OPINION THAT THE OBLIGATION FOR PAYMENT OF POST-PRODUCTION COSTS IN A SPACING UNIT COMPRISED OF TWO OR MORE SEPARATELY OWNED TRACTS AND/OR INTERESTS CONTINUES TO BE GOVERNED BY THE LANGUAGE OF THE INDIVIDUAL LEASE AGREEMENTS. ABSENT AN EXPRESS LEASE PROVISION TO THE CONTRARY, THE ROYALTY OWNERS WITHIN THE UNIT ARE OBLIGATED TO SHARE RESPONSIBILITY FOR POST-PRODUCTION COSTS WITH THEIR RESPECTIVE WORKING INTEREST OWNERS.
(RICK D. CHAMBERLAIN)